62 341
64 158
64 477
64 478
62 341
79 303

ROBERT WETHERILL v. FRED N. CANNEY and Others.[1]

Nov. 4, 1895.

Nos. 9509—(60).

**Fraudulent Conveyance—Reservation of Benefit to Grantor.**

Where a conveyance is made to a party wholly and primarily for the use of the grantor, it is void as to his creditors, existing or subsequent, without reference to the intention of the parties thereto, for as to the creditors of the grantor the subject-matter of the grant remains his property; but where the conveyance is made for the actual and real use of the grantee, and the reservation of a benefit to the grantor is incidental and partial, it is not void as to creditors, unless in fact it was made with the intent to defraud them.

**Same—Absence of Fraudulent Intent.**

Rule applied in this action, which was brought to set aside a deed as to creditors, which was made in consideration of the past services of the grantee to one of the grantors and his promise to support them, and *held*, that the trial court's finding of fact to the effect that the deed was not in fact made with intent to place the property beyond the reach of creditors, but that the deed in law is presumed to be fraudulent as to the plaintiff, a creditor, where no other facts were found from which an intent to defraud must be necessarily inferred, does not support its conclusion of law that the deed is fraudulent and void, and should be set aside as to the plaintiff.

Appeal by defendants from an order of the district court for Hennepin county, Hicks, J., denying a motion for a new trial. Remanded with directions to enter judgment for defendants.

*Welch & Hayne*, for appellants.

*Roberts & Sweet*, for respondent.

START, C. J. Action to set aside a deed of certain real estate made by the defendants Thomas J. and Julia A. Canney to the defendant Fred N. Canney, as fraudulent as to creditors. Trial by the court without a jury, and judgment ordered for the plaintiff, adjudging the deed fraudulent as to him, and from an order denying their motion for a new trial the defendants appealed.

[1] Reported in 64 N. W. 818.

The here material facts found by the court were substantially as follows: That on February 3, 1890, the defendant Thomas J. Canney and his wife, Julia A., in consideration of a loan of $20,-000, executed their promissory note for that amount to the plaintiff, and at the same time secured its payment on two lots in Ridgewood addition to Minneapolis. That the lots were then owned by Thomas J., and were free from all incumbrances of every kind except the mortgage to the plaintiff, and he continued to be such owner until after the making of the deed in question. That the lots were at the time of the execution of such deed of the fair market value of $25,000. That on November 12, 1892, the defendants Thomas J. and Julia A. executed to the defendant Fred N., their son, a deed duly recorded November 15, 1892, in form conveying to him certain lots in Cottage City and in Menage's Third addition to Minneapolis, and a tract of 40 acres in section 13, township 28, range 24, in the county of Hennepin, and of the aggregate value of $5,000. That the record title to the 40-acre tract was then in the name of Julia A., but prior to December 23, 1891, Thomas J. was the sole owner thereof, and on that day caused it to be conveyed, without consideration, to Julia A. That the balance of the real estate so conveyed to Fred N. was, at the time the deed was made to him, owned by Thomas J., and unincumbered. That Julia A. was insolvent when the deed was made to her son. That the sole consideration for the execution of the deed from Thomas J. and Julia A. to Fred N. was the following agreement:

"In consideration of the conveyance to me by Julia A. Canney and Thomas J. Canney, her husband, who are my father and mother, by deed dated November 2, 1892, and recorded in the office of the register of deeds of Hennepin county, Minnesota, in Book 374 of Deeds, page 145, to which reference is made for a particular description of the lands thereby conveyed, I do hereby release and discharge said Julia A. Canney and Thomas J. Canney, and each of them, of and from all claims and demands whatsoever, arising or growing out of services performed by me for them, or either of them, since I attained my majority, no settlement or accounting of the same ever having been made between us, and said services so performed amounting to a considerable sum and covering a period of about fifteen years. And do further covenant and agree

to and with said Julia A. Canney and Thomas J. Canney as further consideration for said conveyance that I will, during the natural lives of each of them, provide and supply to them and each of them the necessary means and provisions for their comfortable support and maintenance at all times, and whenever by reason of old age or infirmity or otherwise they or either of them become unable to provide for themselves; and I further covenant and agree that the failure on my part in the performance of the terms and conditions of this agreement shall operate to avoid said conveyance for all purposes whatsoever, and revest the title to the said premises in said Julia A. Canney and Thomas J. Canney absolutely and to all intents and purposes the same as though said conveyance had never been made to me, and I further covenant and agree that the said Thomas J. Canney and Julia A. Canney shall have the right, so long as they may desire to exercise the same, to have one-half of the hay grown on the forty-acre tract of land conveyed by said conveyance for their own use; and I further agree to faithfully and fully perform the terms and conditions hereof at all times, and the covenants herein contained shall bind my heirs, personal representatives and assigns."

That the services referred to in this agreement consisted of various kinds of services rendered by Fred N. after he was 21 years old to his father, at different times and extending over a period of 15 years, without any agreement made by the father to pay for them; but there was an understanding between the father and son that at some time the son should be rewarded for any services rendered to his parents. That the evidence as to the value of the services was so indefinite that the court was unable to find what the services so performed were reasonably worth, and the amount of the payments thereon could not be fixed from the evidence, and therefore the court was unable to find whether or not Fred N. had been paid in full for such services prior to the making of the deed to him. That, at the time the deed was made to him, his parents, the grantors, were not indebted in any sum whatever except upon their mortgage note to the plaintiff. "That there was no evidence showing any actual design upon the part of any of the defendants in said transaction to place the property beyond the reach of creditors, and the only fraud in the transaction is such as the law

will presume from the transaction itself, and the attendant circumstances.      But the court finds that, from all the facts disclosed by the evidence, the transaction in law is presumed to be fraudulent as to this plaintiff." The court further found that the plaintiff recovered judgment on July 22, 1893, against the defendants Thomas J. and Julia A. upon their mortgage note to him in the sum of $22,-167.57, and on July 28 an execution was duly issued on the judgment, and returned unsatisfied on August 4; that on January 2, 1894, plaintiff foreclosed his mortgage by advertisement, and the mortgaged premises were sold at the foreclosure sale to the plaintiff for $20,000; that the costs amounted to $229.70, leaving a balance of $19.770.30. to be applied on his judgment.

The conclusions of law upon the foregoing facts were to the effect that the consideration for the deed was inadequate and void; that the deed is fraudulent and void as against the plaintiff, and he is entitled to a decree setting aside the deed, and decreeing his judgment to be a lien on the premises the same as if the deed had never been executed.

One of the defendants' assignments of error is to the effect that the facts found by the court do not justify its conclusions of law. It is first necessary to construe the findings of fact which we have quoted, as to the intention with which the deed was made, before we can dispose of this assignment of error.

Upon the trial the plaintiff's counsel stated when he rested his case: "We do not claim that there was any actual fraudulent intent in the minds of the defendants, when the conveyance in question was made, to defraud anybody. The fraud we rely upon is legal fraud." It is apparent that the trial court had reference to this admission when it made the finding here in question, and if we read it in the light of the admission, its meaning is reasonably clear, and we construe the finding in effect to be that the deed was not in fact made with intent to defraud the plaintiff or any one else, or to place the property beyond the reach of creditors, but that from the transaction itself and the attendant circumstances, the deed is fraudulent and void as a matter of law.      It follows, then, that unless the deed, when read with the agreement which was its consideration, is void on its face as a matter of law, without reference to the intention of the parties in making it, or their then pe-

cuniary situation, the findings of fact do not support the trial court's conclusions of law.

If we understand the claim of plaintiff's counsel, it is that the deed, when read with the agreement, is void as to the plaintiff, as a matter of law, under the provisions of G. S. 1894, § 4218, and that no finding of fact to the effect that the deed was made to delay or defraud creditors was necessary. This section of the statute is limited by its terms to goods and chattels, but the principle upon which it rests is a part of the common law, and applies to realty as well as personalty. It is founded on the self-evident proposition that a man's property should be subject to the payment of his debts, although he has vested a nominal title thereto in some other person. For that purpose the law declares the title to be in the debtor, and no transfer which is entirely nominal can stand in the way. The intentions of the parties to such a transfer, whether honest or fraudulent, are wholly immaterial, for the reason that the property in fact belongs to the grantor, and his creditors are entitled to subject it to the payment of their demands, without reference to when these debts were contracted or the motive for placing the naked nominal title to the property in the name of the grantee. It necessarily follows that neither the statute nor the common-law principle to which we have referred has any application to cases in which the conveyance is made for the real and actual use of the grantee and any reservation to the grantor is incidental and partial. Camp v. Thompson, 25 Minn. 175; Curtis v. Leavitt, 15 N. Y. 9, 122.

In the case at bar it appears upon the face of the deed and agreement, when read together, that the transfer was not merely nominal and wholly in trust for the grantors, but was made primarily for the use of the grantee, with a partial reservation for the benefit of the grantors. The case, then, is one under G. S. 1894, § 4222; and the question whether or not the deed is void as to the plaintiff depends on the fact whether or not it was made with the intent to delay or defraud creditors. The question of such fraudulent intent is one of fact, not of law; but where the facts are undisputed, and the inference of fraud therefrom inevitable, it is the duty of the court to direct a verdict accordingly. Fish v. McDonnell, 42 Minn. 519, 44 N. W. 535; Cortland Wagon Co. v. Sharvy, 52 Minn. 216, 53

N. W. 1147.    In such cases, however, the direction of the court is not based upon the proposition that the transaction was a "fraud in law" (whatever this term may mean), but on the proposition that the evidence conclusively shows that the transaction was in fact fraudulent.    The case of Henry v. Hinman, 25 Minn. 199, illustrates this proposition.    That case was one where a party who was insolvent and in debt transferred all of the property which could be reached by execution issued to the county where he lived, on the nominal consideration of one dollar and the actual consideration of a promise to support him while he lived.    This was held to make a clear prima facie case of an intent to defraud, and, there being no evidence to overcome it, the finding of fact by the trial court to the effect that the conveyance was not made with intent to defraud was not justified by the evidence.

It may be conceded that in the absence of an agreement, express or implied, the law implies no promise to pay for services rendered by members of the same family to each other, and that services so rendered do not constitute a valuable consideration to support a deed as against creditors.    But the evidence in this case would have justified a finding that the services rendered by the son to the father were upon the implied agreement that he should receive pecuniary compensation therefor, and it is not clear that the trial court intended to find that there was no such implied agreement. It is true that the trial court found that there was no agreement by the father to pay for the services; but it is found that they were rendered, that there was an understanding that the son should be rewarded for his services, and there is no finding that they were ever paid for in full except by the execution of the deed.    If, however, the finding is construed as a specific one, to the effect that there was no agreement, express or implied, to pay for the services, still the validity of the deed depends on the fact whether or not it was made with the intent to defraud creditors, for the fact remains that it was made for the real and actual use of the grantee, and not wholly for the use of the grantor.

Again, if a grantor retains property sufficient for the payment of all of his debts, he has a right in good faith to provide for his future support by a conveyance of a portion of his property.    Bump, Fraud. Conv. § 200 (220).    If, in fact, such conveyance is made to

defraud creditors, it is void as to them, although the grantor re-tained sufficient other property to pay his debts. Therefore, in any possible view of the findings of the trial court, the deed in question was not void, unless in fact it was made to defraud creditors. This fact should have been found specifically by the trial court, or such other facts found from which the inference of an intent to defraud was inevitable, in order to support its conclusions of law. There is no finding of such other facts in this case. On the contrary, the facts actually found by the court negative any inference of an intent to defraud creditors. It is found as a fact that the grantors, at the time the deed was made, were not indebted to any one except to the plaintiff; that his debt was secured upon otherwise unincumbered real estate, which was not exempt, and was of the fair market value of $25,000, or some $3,000 more than the plaintiff's claim; that his mortgage and judgment represented the same claim. There is no finding that the grantor Thomas J. (the actual owner of a portion of the property conveyed to his son, and, as to the plaintiff, the owner of the whole thereof) was insolvent when the deed was made (the execution was returned unsatisfied some 10 months after the deed was made); and the uncontradicted evidence shows that he was solvent when the deed was executed, and that he retained unexempt property amply sufficient to pay all of his debts. We have not overlooked the fact that the court found that the defendant Julia A. was insolvent at the time the deed was made; but, assuming that this finding is supported by the evidence, the inference, in view of the other facts found, does not inevitably follow that she in fact intended to defraud the plaintiff by the execution of the deed in question.

Our conclusion is that, in the absence of any finding of fact in this case to the effect that the deed in question was made with the intent to defraud the creditors of the grantors, the conclusion of law by the trial court, that the deed is void as to the plaintiff, is not sustained by its findings of fact. On the contrary, it logically follows that upon the admission of counsel and the findings of fact, as we construe them, the defendants were entitled to a dismissal of the action on the merits.

The case is therefore remanded, with directions to the district court to enter judgment for defendants. So ordered.